IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FIDEICOMISO DE LA TIERRA DEL
CAÑO MARTIN PEÑA,
        **Plaintiff,**

                        **v.**                    **CIVIL NO.** 09-1581 (FAB)

LUIS G. FORTUÑO, <u>et al.</u>,
        **Defendants.**

**OPINION & ORDER**

BESOSA, District Judge

        Pending before the Court are several issues which have been
briefed by the parties pursuant to the Court's orders.  (<u>See</u> Docket
Nos. 10 and 48)  After examining the arguments contained in the
parties' briefs regarding <u>Pullman</u> abstention, the Court hereby
**DISMISSES** this case **WITHOUT PREJUDICE** due to the presence of
unsettled issues of Puerto Rico law which have the potential to
render consideration of any federal constitutional issues
unnecessary.

**DISCUSSION**

**I.   Background**

        In September of 2004, Puerto Rico Law 489, P.R. Laws Ann. tit.
23, §§ 5031-66, ("Law 489") was approved by the Puerto Rico
Legislature.  Law 489 is also known as the "Martín Peña Canal
Special Planning District Integrated Development Act."  (Docket
No. 6 at ¶¶ 4.1-4.2)  Law 489 was adopted in order to address the
environmental issues of the Martín Peña Canal and "rehabilitate and

revitalize the communities along its north and south banks in order to promote a healthy relationship between the natural environment and its surrounding city and communities, with a vision of integrated development based on community empowerment." See P.R. Laws Ann. tit. 23, § 5032.  The communities within the scope of the act form the Special Planning District of Martin Peña Canal ("Special Planning District"), which includes Barrio Obrero, Barrio Obrero Marina, Buena Vista Santurce, Las Monjas, Parada 27, Buena Vista Hato Rey, and Israel-Bitumul.  P.R. Laws Ann. tit. 23, § 5031.

In order to further the statute's land use development plan for the Special Planning District, Law 489 provides for the creation of the Martin Peña Canal ENLACE Project Corporation ("ENLACE") and plaintiff, the Martin Peña Canal Land Trust ("Land Trust" or "Plaintiff").  P.R. Laws Ann. tit. 23, §§ 5046, 5048. Law 489 gives these two entities certain powers and duties to manage and develop the lands within the Special Planning District. See P.R. Laws Ann. tit. 23, §§ 5033-40, 5048.  The Land Trust alleges that, in order to exercise its assigned powers and duties, Law 489 gives it ownership rights to approximately two hundred acres of land in the Special Planning District.  (Docket No. 6 at ¶¶ 3.5, 4.13-4.14, 4.21)

On June 23, 2009, the Puerto Rico Legislature passed Puerto Rico Law 32 ("Law 32"), which amended Law 489 to change provisions relating to the transfer of properties within the Special Planning

District.  (Docket No. 6 at ¶¶ 4.24-4.26; Docket No. 58-2)  Law 32 states that its purpose is to "harmonize" Law 489 with "other laws that also have as their purpose matters of the highest public interest."  (Docket No. 58-2 at 1)  The amendment provides for the reversion of title of certain properties within the Special Planning District to the Municipality of San Juan ("Municipality") and to Puerto Rico public agencies.  (See Docket No. 58-2) Plaintiff alleges that Law 32's reversion of title interferes with its ownership of properties transferred to it by Law 489.  (Docket No. 6 at ¶ 1.1)

On June 26, 2009, the Land Trust filed an amended complaint against:  (1) Luis G. Fortuño, in his official capacity as Governor of the Commonwealth of Puerto Rico ("Fortuño"); (2) Antonio Sagardia, in his official capacity as Attorney General of the Commonwealth of Puerto Rico ("Sagardia"); (3) the Municipality; (4) Jorge Santini, in his official capacity as the Mayor of the Municipality ("Santini"); (5) the Puerto Rico Electric Power Authority ("PREPA"); (6) the Puerto Rico Highways and Transportation Authority ("PRHTA"); and (7) the Puerto Rico Land Administration ("PRLA").  (Docket No. 6 at ¶¶ 3.7-3.14)  The complaint alleges claims pursuant to 42 U.S.C. § 1983 ("Section 1983") based on violations of the Takings Clause, the Due Process Clause, and Article I, Section 10 of the United States Constitution.  Id. at ¶¶ 5.2-5.4.  The complaint also alleges

Civil No. 09-1581 (FAB)                                          4

parallel takings and due process claims under the Puerto Rico
Constitution.  Id. at ¶¶ 5.2-5.3.  These claims revolve around the
legislative transfers of real property pursuant to Law 489 and
Law 32.  See id.

     Also on June 26, 2009, the Land Trust filed a motion for a
temporary restraining order ("TRO") "prohibiting each of the
defendants from in any way disposing of or managing the properties
obtained by them by virtue of Law 32 . . . until the court issues
its determination with respect to the constitutionality of Law 32."
(Docket No. 4 at 8)  On June 29, 2009, the Court denied the motion
for a TRO and ordered the parties to file briefs no later than
July 31, 2009, as to the following issues:  (1) whether the Court
should abstain from hearing this case based on the Pullman
abstention doctrine; (2) whether the Land Trust has juridical
personality with the capacity to sue and be sued; and (3) whether,
under Puerto Rico law, a trust generally, or the Land Trust
specifically, can hold title to property, or may only hold property

in trust for its true owner.  (Docket No. 10)[1]  The Court
subsequently ordered the parties to include in their briefs
discussion of whether the Commonwealth of Puerto Rico may, by
virtue of the enactment of another statute, transfer title to lands
previously transferred to the Corporation from other public
agencies or from the public domain by virtue of Law 489, to any
other public agency, or return them to the public domain.  (Docket
No. 48)

On July 31, 2009, the all parties complied with the Court's
orders to brief the abovementioned issues.  (Docket Nos. 58, 59,
63, 70, 75, & 77)  Several defendants also filed motions to dismiss
on July 31, 2009, arguing, *inter alia*, that the Court should
abstain from adjudicating this case due to the presence of several
unsettled issues of Puerto Rico law.  (<u>See</u> Docket No. 61 at 17;
Docket No. 65; Docket No. 76)

---

[1] Plaintiff subsequently appealed the Court's denial of the motion
for a TRO.  (Docket No. 35)  Although the Court of Appeals for the First
Circuit found that it lacked jurisdiction over the appeal, it stated that
"[a]s part of its ruling, the district court should make a finding on the
issue of whether the [Land] Trust is a public or private entity."
(Docket No. 154 at 7, 9 n. 3)  That finding, however, is related to a
federal constitutional standing requirement for a Takings Clause claim.
<u>See</u> <u>Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad
Obligatorio v. Flores Galarza</u>, 484 F.3d 1, 20 (1st Cir. 2007).  Given
that <u>Pullman</u> abstention has been found appropriate with regard to the
Land Trust's federal constitutional claims, it is unnecessary for the
Court to make a determination as to the Land Trust's public or private
nature at the present time.

## II.  Legal Analysis

### A.    Standard for <u>Pullman</u> Abstention

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976). Although abstention is reserved for exceptional circumstances, "'[a]mong those cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law.'" <u>Ford Motor Co. v. Meredith Motor Co.</u>, 257 F.3d 67, 71 (1st Cir. 2001) (quoting <u>Harris County Comm'rs Court v. Moore</u>, 420 U.S. 77, 84 (1974)). Pursuant to the abstention doctrine created in <u>R.R. Comm'n v. Pullman Co.</u>, 312 U.S. 496 (1941), "a federal court confronted with such circumstances 'should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'" <u>Id</u>.

"[T]he <u>Pullman</u> abstention doctrine serves the dual aims of avoiding advisory constitutional decisionmaking as well as promoting the principles of comity and federalism by avoiding needless federal intervention into local affairs." <u>Pustell v. Lynn Pub. Schs.</u>, 18 F.3d 50, 53 (1st Cir. 1994) (citing 17A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 4242 (1988)). In the particular context of unsettled issues of

Puerto Rico law, "abstention [is] especially beneficial . . . because . . . '[a] rigid rule of deference to interpretations of Puerto Rico law *by Puerto Rico courts* is particularly appropriate given the unique cultural and legal history of Puerto Rico.'" Cuesnogle v. Ramos, 835 F.2d 1486, 1495 (1st Cir. 1987) (emphasis in original) (quoting Posadas de P. R. Assoc. v. Tourism Co. of P. R., 478 U.S. 328, 339 n. 6 (1986)).

When determining whether Pullman abstention is appropriate, the court must consider: "(1) whether there is substantial uncertainty over the meaning of the state law at issue; and (2) whether a state court's clarification of the law would obviate the need for a federal constitutional ruling." Ford Motor Co., 257 F.3d at 71. The nature of the unsettled issue can also weigh in favor of abstention. See Pustell, 18 F.3d at 54 (finding abstention more appropriate where unsettled issue of state law dealt with educational policy); San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998) (holding "land use planning" to be a "sensitive social policy" meriting Pullman abstention). Furthermore, "suits for injunctive relief, unlike suits which seek only monetary relief, are highly intrusive into legitimate state functions." Corporacion Insular de Seguros v. Garcia, 680 F.Supp. 476, 480-81 (D.P.R. 1988).

**B.    Unsettled Issues of Puerto Rico Law**

After examining the parties' briefs and the statutes which form the basis of the dispute in this case, it is evident that there are unsettled issues of Puerto Rico Law which militate in favor of <u>Pullman</u> abstention.  These issues relate to:  (1) the Land Trust's legal status; and (2) the validity of any purported legislative transfers of property in Law 489 and Law 32.

**Legal Status of the Land Trust**

There is significant uncertainty under Puerto Rico law as to the nature of the Land Trust as an entity.  Although Law 489 refers to the Puerto Rico Civil Code provisions governing trusts, or *fideicomisos*, it also gives powers and faculties to the Land Trust beyond those typically attributed to trusts.  The Land Trust argues that its structure is based on a "Community Land Trust" model used in other parts of the United States, rather than the Puerto Rico Civil Code.  (Docket No. 106 at 18)  Plaintiff cites its Development Plan stating that the "Community Land Trust" is "a novel and creative means of attending to the situation of ownership in the [Special Planning District] and to minimize involuntary displacement ('gentrification') of the communities."  <u>Id</u>.  The disparity between novel characteristics of the Land Trust and traditional characteristics of a trust under the Puerto Rico Civil Code creates an unsettled issue of Puerto Rico law, the resolution of which could define the rights or powers of the Land Trust.

Under Puerto Rico law, a trust has no independent juridical capacity and cannot hold title to property, sue, or be sued. See P.R. Laws Ann. tit. 31, § 2578 (providing that title is to be registered in the name of the trustee); Benitez-Bithorn v. Rossello-Gonzalez, 200 F.Supp.2d. 26, 31 (D.P.R. 2002). The typical trust's incapacity to sue and hold title to property does not cause significant uncertainty over Puerto Rico law in this case. If a typical trust brings suit over property issues, a court may simply replace the trust with the real party in interest who has the capacity to sue and hold title to property, i.e., the trustee(s). See Benitez-Bithorn, 200 F.Supp.2d. at 31-32. The significant uncertainty in this case, however, stems from language in Law 489 regarding the Land Trust as an entity that departs from the traditional structure of a trust as contemplated by the Puerto Rico Civil Code.

Law 489 provides that "[t]he Land Trust is hereby created with independent juridical personality." P.R. Laws Ann. tit. 23, § 5048. Although the statutory provision creating the Land Trust indicates that it will be "the custodian" of "all the lands transferred to the Corporation," the same provision also states that the Land Trust "shall have the ownership rights to the land," and refers to "the lands owned by the Land Trust." P.R. Laws Ann. tit. 23, § 5048. Pursuant to Law 489, the Land Trust is also given the power to acquire property through various means, including

eminent domain, the public nuisance process, and ownership transfer from public entities.  P.R. LAWS ANN. tit. 23, § 5048(b)(2)-(7). Furthermore, the Land Trust may issue "participation bonds" as a form of investment in community development.  P.R. LAWS ANN. tit. 23, § 5048(b)(10).

        The trust, or *fideicomiso*, of the Puerto Rico Civil Code is the result of years of development and interpretation.  See Davila Vega v. Agrait, 16 P.R. Offic. Trans. 674 (P.R. 1985).  "The Puerto Rican 'fideicomiso', an institution with very peculiar characteristics of its own, incorporates the principles of the Anglo-Saxon 'trust' and tries to harmonize them with [Puerto Rico's] civil law tradition."  Davila Vega, 16 P.R. Offic. Trans. 674 (citing Alvarez v. Sec'y of the Treasury, 78 P.R.R. 395, 401-402 (1955), on reconsideration, 80 P.R.R. 15, 20, 33-39 (1957)). In Davila Vega v. Agrait, 16 P.R. Offic. Trans. 674 (P.R. 1985), the Puerto Rico Supreme Court describes the historical development of the trust under Puerto Rico law over the course of the twentieth century, which included the incorporation of elements from both the common and civil law traditions.  The Puerto Rico Supreme Court has considered various common and civil law sources in defining the nature of the trust under Puerto Rico law when confronted with its "grey zones, . . . gaps and vacuums."  See id.  Given the unique development of the Puerto Rican trust and its incorporation of numerous foreign elements, any decision regarding the legal status

Civil No. 09-1581 (FAB)                                             11

of the Land Trust and its novel characteristics adapted from the

"Community Land Trust" model is more appropriately left to the

Puerto Rico courts.

### Validity of Property Transfers in Law 489 and Law 32

Another unsettled issue of Puerto Rico law presents

itself in the provisions of Law 489 and Law 32 purporting to

transfer property.  These provisions create an unclear statutory

scheme which has never been interpreted by the Puerto Rico courts.

According to the factual allegations in the complaint, the subject

of the current litigation is the real property contained within the

communities of Barrio Obrero, Barrio Obrero Marina, Buena Vista

Santurce, Las Monjas, Parada 27, Buena Vista Hato Rey, and Israel-

Bitumul.  (See Docket 6 at ¶ 4.1-4.2)  Law 489, however, is not

entirely clear as to what property is subject to its land use

development plan.  See P.R. LAWS ANN. tit. 23, § 5031-66.  Neither

is it clear as to which public or private entities are actually

vested with title to the property falling within the statute's

scope.  See id.  The uncertainty regarding the scope and definition

of properties is further reflected in Law 32's subsequent amendment

to Law 489.  (See Docket No. 58-2)

The original version of Law 489 has several provisions

relating to identification and transfer of various property rights,

none of which lend sufficient clarification to preclude

Pullman abstention.  See P.R. LAWS ANN. tit. 23, §§ 5045-5048.

Section 5045 provides that "[i]n the case of lands of public domain or patrimony, the ownership rights thereof through this chapter shall remain vested [in] the Corporation [ENLACE]," subject to certain exceptions.  See 23 P.R. LAWS ANN. tit. 23, § 5045.  These exceptions are contained in Section 5046, which provides for an official delimitation to be conducted by the Puerto Rico Department of Natural and Environmental Resources related to a canal development project planned by the United States Army Corps of Engineers.  P.R. LAWS ANN. tit. 23, § 5046.  After completion of the delimitation, the statute provides for then undetermined land to be transferred to ENLACE.  Id.  ENLACE would then "create the Land Trust with these transferred lands, as provided by this chapter, which it shall manage on behalf of the communities of the [Special Planning District]."  Id.

        Despite Section 5045's statement that ownership of public domain or patrimony lands would remain vested with ENLACE, the original version of Law 489 also contains several provisions discussing ownership rights with respect to the Land Trust. See P.R. LAWS ANN. tit. 23, § 5048.  As discussed above, Section 5048 provides that the Land Trust will be "the custodian" of "all the lands transferred to the Corporation [ENLACE]."  Id.  Section 5048 also states that the Land Trust "shall have the ownership rights to the land," and refers to "the lands owned by the [Land] Trust."  Id.  Furthermore, Section 5048 states that the Land Trust

has the power to acquire other property, including public lands.

P.R. Laws Ann. tit. 23, § 5048(b)(2)-(7).[2]

Law 32's amendment of Law 489 does little to clarify the
scope or direction of the statutory scheme at issue in this case.
(See Docket 58-2)  In its legislative preamble, Law 32 hints at the
uncertainty in the original version of Law 489.  See id. at 1-2.
Law 32 states that public agencies and the Municipality "may have
their own objectives, purposes, and programs," and that "[i]t is
proper, therefore, that to harmonize what it provided in [Section

---

[2] Plaintiff argues that the original version of Law 489 clearly
gives it ownership rights over public domain lands.  (Docket No. 106 at
42-43)  It argues that the wording of the official English translation
of Law 489 is incorrect, and this Court should instead rely on the
authoritative Spanish version of the text.  (See Docket No. 106 at 42-43)
The Land Trust states that the language in Section 5045 stating that
title to public domain and patrimony lands "shall remain vested" in the
Corporation, is an error in translation and that a proper translation of
the statute would place lands with the Corporation only for the period
of time until they were to be transferred to the Land Trust.  Id.
Plaintiff argues that this Court should recognize the translation error
and apply the meaning they claim is contained in their certified English
translation, which it claims to be closer to the original Spanish version
of the statute.  Plaintiff states that Puerto Rico law holds original
Spanish versions of statutes to be authoritative when there is a
discrepancy between the original Spanish version and its English
translation.  Id.; See P.R. Laws Ann. tit. 31, § 13.
      Plaintiff's argument, however, only serves to highlight the
appropriateness of abstention in the present case. Even assuming,
arguendo, a translation error exists, this Court may not rely on any
untranslated material in the Spanish language, including the original
Spanish version of Law 489, to make a determination as to the accuracy
of an English translation. See Puerto Ricans for P.R. Party v. Dalmau,
544 F.3d 58, 67 (1st Cir. 2008); Local Rule 10(b). The resolution of
property rights that may or may not have been conferred or removed
pursuant to Laws 489 and 32 turns on the proper construction of those
laws.  If, as the Land Trust argues, there is an error in the official
translation, the Puerto Rico Courts would be a far more appropriate forum
to address that issue, as they may rely on the authoritative Spanish text
of the statute.

5045] with other laws that also have as their purpose matters of the highest public interest, that [Section 5045] be amended." <u>Id</u>. Law 32 further finds it necessary "to amend [Section 5045] to suppress the reference to public domain property, since these are not susceptible to individual ownership." <u>Id</u>. at 2 (citing P.R. Laws Ann. tit. 31, § 1025).

The substantive amendments contained in Law 32 only apply to Section 5045 of the original version of Law 489, providing for reversion of title to any property that previously belonged or pertained to the Municipality.  (Docket 58-2 at 2)  Law 32 also provides for, *inter alia*, reversion of title to agencies of the Commonwealth of Puerto Rico, pending studies to determine which properties are actually appropriate for transfer to the Corporation.  (Docket 58-2 at 3)  Law 32, however, contains no amendments to other sections of Law 489, thus leaving intact other contradictory provisions of the statute regarding transfer of title and ownership, such as Section 5048.  <u>See</u> P.R. Laws Ann. tit. 23, §§ 5046-5048.

In conclusion, Law 489's provisions regarding property are not entirely clear as to the scope of its effect on vaguely defined real property.  <u>See</u> P.R. Laws Ann. tit. 23, §§ 5045-5048; (Docket 58-2)  This lack of clarity also extends to the transfer of title to any lands affected by Law 489.  <u>See id</u>.  Without further interpretation as to the validity or scope of its land transfers,

Law 489 and its subsequent amendment through Law 32 form a substantially uncertain statutory scheme regarding an undetermined property base and its future land use development plan.

   **C.   Whether the unsettled issues of Puerto Rico law could obviate the need to consider federal constitutional issues**

   The complaint contains Section 1983 claims based on several alleged constitutional violations, including: (1) violations of substantive and procedural due process; (2) violation of the takings clause; (3) and violation of Article I, Section 10 of the United States Constitution.[3]  According to the applicable case law and the allegations of the complaint, all of these constitutional violations are based on the validity of property rights held by the Land Trust.  See <u>Franklin Mem. Hosp. v. Harvey</u>, 575 F.3d 121, 125 (1st Cir. 2009) (takings clause); <u>SFW Arecibo, Ltd. v. Rodriguez</u>, 415 F.3d 135, 139 (1st Cir. 2005)

---

   [3] Plaintiff alleges two claims under Article I, Section 10 of the United States Constitution.  (Docket No. 6 at ¶ 5.4)  The first claim alleges that Law 32 constitutes a "Law impairing the Obligation of Contracts."  <u>Id</u>.; U.S. Const. art. I, § 10, cl. 1.  The second claim alleges that Law 32 constitutes an *ex post facto* law or bill of attainder.  (Docket No. 6 at ¶ 5.4)  The second claim is inappropriate in this case.  The Constitutional language prohibiting bills of attainder and *ex post facto* laws deals with individual punishment for past conduct and "retroactivity of penal legislation . . . ," not government interference with private property rights.  <u>See Eastern Enterprises v. Apfel</u>, 524 U.S. 498, 533-34 (1998) (citing <u>Calder v. Bull</u>, 3 Dall. 386, 1 L.Ed. 648 (1798)); <u>Lynce v. Mathis</u>, 519 U.S. 433, 440 n. 12 (1997) (citing <u>United States v. Brown</u>, 381 U.S. 437, 456-62 (1965)).  Given that the complaint only alleges governmental action toward private property rights, the Land Trust's second claim based on Article I, Section 10 of the United States Constitution would not survive even if the court decided against <u>Pullman</u> abstention.

(procedural due process); <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 272-73 (1st Cir. 2009) (substantive due process); <u>General Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992) (contracts clause); (Docket No. 6 at ¶¶ 3.6, 4.23, 5.2-5.4) (alleging federal constitutional claims based on interference with property rights).  These property rights "are creatures of state law."  <u>See</u> <u>Chongris v. Bd. of Appeals of Town of Andover</u>, 811 F.2d 36, 43 (1987) (citing <u>Bishop v. Wood</u>, 426 U.S. 341, 344 n. 7 (1976); <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972)).  This Court must therefore look to Puerto Rico law to determine whether the Land Trust has any property rights that may give rise to the constitutional claims alleged in the complaint.  <u>See</u> <u>id</u>.

        Depending on the resolution of the unsettled issues of Puerto Rico law outlined above, the Land Trust may not have the property rights necessary to sustain its federal constitutional claims.  The ambiguities and contradictions in Law 489 and Law 32 leave open the possibility that their land transfers are either invalid, or directed toward ENLACE rather than the Land Trust.  Furthermore, any determination as to the Land Trust's legal status could affect its ability to hold title to any property, including the property which is the subject of this litigation.  Given that state law property rights are necessary to bring the federal constitutional claims alleged in the complaint, interpretations of these unsettled issues regarding property rights in the Special

Planning District could potentially moot any decision of this Court regarding those federal constitutional claims.

### D.   Abstention in this Case

Both elements for the exercise of <u>Pullman</u> abstention are satisfied.  <u>See</u> <u>Ford Motor Co.</u>, 257 F.3d at 71.  This case presents unsettled issues of Puerto Rico law which have not been interpreted by the Puerto Rico courts.  The resolution of these issues could potentially nullify any property interest held by the Land Trust, thereby obviating consideration of its federal constitutional claims.

Other factors, such as the nature of the unsettled issues of Puerto Rico law and the relief requested in the complaint, support abstention.  With the exception of attorneys' fees, the Land Trust seeks only injunctive and declaratory relief with regard to the land use development plan created by Law 489 and Law 32. (<u>See</u> Docket No. 6 at ¶¶ 5.2-5.3, 5.6)  This injunctive relief would be highly intrusive federal intervention in a significant state interest, land use planning, which has been accorded special consideration in <u>Pullman</u> abstention analysis.  <u>See</u> <u>San Remo Hotel</u>, 145 F.3d at 1104; <u>Corporacion Insular de Seguros</u>, 680 F.Supp. at 480-81.  Therefore, it appears that abstention in the present case would further serve the purposes of <u>Pullman</u> abstention related to comity and federalism by decreasing the possibility of federal interference in state law matters.  <u>See</u> <u>Pustell</u>, 18 F.3d at 53.

Furthermore, special deference is paid to the Puerto Rico courts regarding Puerto Rico law.  See <u>Cuesnogle</u>, 835 F.2d at 1495. This deference appears especially important in this case, where the Land Trust, a novel entity under Puerto Rico law, claims that the official English translation of a statute is erroneous and argues that Law 489's meaning is clear in light of the original Spanish text.  (<u>See</u> Docket No. 106 at 42-43)  This Court is prohibited from relying on the Spanish version of Law 489, thus making an initial interpretation of the statute in the Puerto Rico courts, both linguistically and legally, all the more appropriate.  Given this deference and the factors outlined above, this Court finds <u>Pullman</u> abstention appropriate in the circumstances of the present case.

When exercising <u>Pullman</u> abstention, a court may stay litigation in the federal forum until the conclusion of state court proceedings or dismiss the case without prejudice.  See <u>Rivera Vazquez v. Asociacion de Residentes de University Gardens</u>, 220 F.Supp.2d 95, 98 (D.P.R. 2002) (citing <u>Harris County Commissioners Court v. Moore</u>, 420 U.S. 77, 88-89 (1975); <u>El Dia, Inc. v. Hernandez Colon</u>, 963 F.2d 488, 496 n.9 (1st Cir. 1992)).  The particular equitable relief requested by the Land Trust reflects a need for efficiency and convenience.  See <u>Rivera Vazquez</u>, 220 F.Supp.2d at 99 (citing <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 534-35 (1st Cir. 1995); <u>El Dia, Inc.</u>, 963 F.2d

at 493-98.  Given that consideration of all federal constitutional claims alleged in the complaint could be obviated through the resolution of unsettled issues of Puerto Rico law, those needs would be best served by dismissing the present case without prejudice.  See id.

Although the court has decided to abstain at this time, the Land Trust will have "an adequate and fair opportunity to have their federal claims heard." Pustell, 18 F.3d at 55 n.7 (citing Gibson v. Berryhill, 411 U.S. 564 (1973)).  The Land Trust "may choose to present all claims in state court; alternatively, they may reserve federal constitutional claims for adjudication in federal court." Id. (citing England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 421-22 (1964)).  If the Land Trust reserves its federal constitutional claims, it "may file a petition to reinstate proceedings in this case" upon the resolution of unsettled of issues of Puerto Rico law by the Puerto Rico courts. See id.; Rivera Vazquez, 220 F.Supp.2d at 99.[4]

## CONCLUSION

For the reasons expressed above, the Court **DISMISSES** plaintiff's claims **WITHOUT PREJUDICE**.  Given that all claims in the complaint have been dismissed without prejudice, defendants' dispositive motions (Docket Nos. 61, 65, 71, 76, 78) are hereby

---

[4] Rather than being considered a new filing, this petition shall relate back to the filing date of the present complaint.  See Rivera Vazquez, 220 F.Supp.2d at 99.

deemed **MOOT**.  All other motions pending resolution are also deemed

**MOOT**.

    **IT IS SO ORDERED.**

    San Juan, Puerto Rico, November 10, 2009.


                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE